TALIAFERRO *v.* BOYD.

Opinion delivered November 16, 1914.

1. SPECIFIC PERFORMANCE—MISREPRESENTATION.—An action for specific performance of a contract to trade lands will be defeated, if a statement by one party as to the quantity of ground to be included in the trade is untrue, irrespective of the party's intent to deceive, if the other party relied upon the misrepresentation.

2. SPECIFIC PERFORMANCE—MISREPRESENTATION.—Where there has been a misrepresentation as to the quantity of land included in a tract forming one side of a contract of trade, an action for specific performance will be decreed only if the misrepresentation was relied upon by the party to whom it was made, and it must be the immediate cause of his conduct which alters his legal relations.

3. SPECIFIC PERFORMANCE—MISREPRESENTATION AS TO QUANTITY—MATERIAL SHORTAGE.—In a contract of sale of town lots, when the

buyer, in making the contract, relied upon the seller's false statement as to the quantity of land included in the sale, and when there was a shortage in a triangular strip of land with a frontage of sixty-two feet, such a deficiency will be held to be material.

4. SALE OF LAND—MISREPRESENTATION AS TO QUANTITY—WAIVER.—A party agreeing to purchase a tract of land in reliance upon a false statement of the seller as to the quantity thereof, will not be held to have waived the misrepresentation, when, before the sale was completed, he negotiated with a third party for the resale thereof.

Appeal from Cleveland Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT BY THE COURT.

E. M. Taliaferro instituted this action in the chancery court against Josephine Boyd to compel specific performance of a contract for the exchange of real estate. The plaintiff, Taliaferro, testified on behalf of himself substantially as follows: I formerly resided in the town of Rison, in Cleveland County, Arkansas, but I now reside in the city of Seattle in the State of Washington; in November, 1912, I came to Rison, Arkansas, where I owned a frame hotel, and while there George Tolson asked me if I wanted to swap my hotel property for property at Pine Bluff, Arkansas, owned by Mrs. Josephine Boyd; I first looked at her property and in about a week came back to Rison, where Mrs. Boyd resided, and went to see her; after talking the matter over with her she told me to see George Tolson and any deal I could make with him would be all right with her; Mr. Tolson went with me to see the hotel property and Mrs. Wayne, who was running the hotel at the time; I showed him over the premises and showed him the land that belonged to the hotel and which I was to convey to Mrs. Boyd; on December 4, 1912, Mrs. Boyd and I entered into a written contract whereby she agreed to convey to me one-fourth of a block of ground in the city of Pine Bluff belonging to her, and in exchange therefor I agreed to pay her $225, and to convey to her my hotel property at

Rison, including the lots, and all the fixtures and furniture and furnishings thereunto belonging; the agreement further provided that in case of the loss of the buildings on either place by fire before the trade was consummated, the contract should be void.

Mrs. Josephine Boyd, in her own behalf, testified: George Tolson came to me and told that Mr. Taliaferro had spoken to him about exchanging my Pine Bluff property for his hotel property at Rison; Mr. Tolson first looked at the property and I talked with Mr. Taliaferro about it afterward; Mr. Taliaferro represented to me that he had an acre and a half or two acres of ground and when I asked him if the fence around the property was on the line he said that I would get all the fencing; he further represented to me that Mrs. Wayne, who was then running the hotel, was running after him for a lease and that he was then renting it to her for $30.00 per month; I suggested an exchange of insurance with Mr. Taliaferro and told him I would not take the property unless I could carry good insurance on it and asked him how much insurance he carried; he replied that he did not carry insurance on the hotel, as he did not think it paid him, but said that parties had been after him, trying to get him to take out insurance on it; he did not tell me that the property could not be insured; I also asked him about the building of a brick hotel in the town of Rison and he told me that he had traveled a good deal and he did not see any town of the size of Rison with a brick hotel, and further stated that he had talked to Doctor Ackerman a few days before that time and that Doctor Ackerman had told him that he was not going to build a brick hotel; on the next day after the contract was made I went with Mr. Taliaferro and Mr. Tolson to look at the hotel property and I spoke to Mrs. Wayne about leasing the hotel; she told me that she did not want to lease it; on that same visit I also found out that all the property within the enclosure did not belong to Mr. Taliaferro; subsequently I went to see some agents about insuring the property and was informed by them that no

insurance from a reputable company could be had upon the hotel; after that the property was surveyed and it was ascertained to contain one and one-seventh acres and the survey also showed that there was one-seventh of an acre within the enclosure that did not belong to the hotel.

Mrs. Boyd also testified that she believed the statements and representations made by Taliaferro and relied upon them at the time she entered into the contract with him; and that she refused to carry out the contract when she ascertained that they were not true.

George Tolson testified that when Mr. Taliaferro showed him the property he represented that there was one and one-half or two acres of the land that went with the hotel; that as he went into the hotel to examine it he saw where the fences were on the north side of the property and after they got to the other side of the house he asked Taliaferro if all the property within the fences belonged to the hotel, and that Taliaferro, with a wave of the hand, replied that it did; that at that time, however, they could not see the fence on the north side of the house, but that he understood that Taliaferro referred to the whole enclosure as belonging to him; and that when the land was surveyed it was ascertained that sixty-two feet on the front, which ran back in an irregular shape on the north side of the house, did not belong to Taliaferro.

Other witnesses for the defendant testified that no insurance on the property could be secured from a reliable insurance company; and it was also shown that in a short time after the contract was made, Doctor Ackerman began the erection of a brick hotel and that Mrs. Wayne had a lease from him on the proposed building.

The plaintiff in rebuttal testified that he had been solicited by insurance agents to take out insurance on the property and that they represented reliable companies, and that at the time he made the contract with Mrs. Boyd he did not know that Doctor Ackerman contemplated the building of a brick hotel in the town of Rison.

The chancellor found in favor of the defendant and dismissed the complaint for want of equity; and the plaintiff has appealed.

*Crawford & Hooker,* for appellant.

1. Where the contract relates to real property, a mere judgment for the payment of money damages for the breach of the contract is not an adequate remedy or compensation, and, therefore, courts of equity will decree a specific performance, where the contract is in writing, is certain, fair and for an adequate consideration and capable of being performed. Here the case meets all these requirements. The burden was on the appellee to prove by a preponderance of the evidence that appellant made the representations alleged, that they were material, that they were false, and that she was induced by them to make the contract. If she failed therein the court had no discretion to refuse to enforce it. 1 Story, Eq. Jur., § 751; 16 Ark. 340-363; Bispham's Principles of Equity, § 364; 4 Pomeroy, Eq. Jur., §§ 1402, 1404; 30 Ark. 547; 2 Story, Eq. Jur., § 742.

The strip of land complained of was not a material shortage. If the court had found as a fact that appellee or her agent made the contract under the impression that there was more land belonging to the hotel property than did in fact belong to it, it would have been proper to allow compensation for the shortage and require appellee to convey her property to appellant. Snell's Principles of Eq., (1 Am. Ed.) 475; Bispham's Prin. Eq., § 363; 4 Pomeroy, Eq. Jur., § 1407 and note 1; 11 Ark. 58, 80.

2. As to the alleged misrepresentations concerning the insurance and the building of a brick hotel, no false statements by the appellant are shown. The burden was on appellee to prove them.

As to the statement that Mrs. Wayne wanted to lease the property, if it be conceded that it was made, as alleged, it is not sufficient to defeat appellant's right to specific performance. It could amount to nothing more

than a puffing or recommendation of his property. 1 Ark. 31; Story's Eq. Jur., 208, 211; 2 Kent's Com. 379; 6 Ark. 513-517; 8 Ark. 146-151; 11 Ark. 58.

Appellee had full opportunity to investigate for herself before the contract was closed. If she failed to inquire of Mrs. Wayne whether she would lease the property, appellee must abide by her own carelessness and inattention. 19 Ark. 522, 528; 27 Ark. 244-250; 31 Ark. 170; 38 Ark. 35; 48 Ark. 148; 46 Ark. 337; 82 Ark. 20. See also Jones on Landlord and Tenant, § 129; 87 Ark. 567.

*Creed Caldwell,* for appellee.

1. Appelle was deceived by appellant's misrepresentation as to the area of the lot. The shortage in the area is material, and appellant will not be heard to deny that it is material. 1 Am. & Eng. Ann. Cases, 810; 71 Ark. 91-99; 38 Ark. 34; 43 Ark. 462; 34 Ark. 169; 35 Ark. 555; 102 Ark. 187.

Even if appellant had not told appellee that the fence was on the line, and had only concealed the fact that sixty-two feet of the front as fenced did not belong to the place, this would have been actual fraud, which alone would have justified the court in cancelling the contract. 22 Ark. 517-522; 26 Ark. 373-380; 35 Ark. 483; 97 Ark. 226.

2. Appellant's statements in reference to Mrs. Wayne's willingness to lease the property were positive, were false and made to deceive appellee, and did deceive her. They were material and "go to the very foundation of the contract and shatter it." 71 Ark. 91; 100 Ark. 144; 96 Ark. 375. Likewise his statements concerning another hotel in the town and the insurance on the property.

3. Appellee's conversation with Robertson on the morning after the contract was signed was not a ratification of the contract. She did not know at that time of the shortage in area of the lot, nor that Mrs. Wayne would not lease the property, nor about the insurance; but if she had known all the facts, it would not have

amounted to a confirmation. Bispham's Prin. Eq., § 259.

HART, J. (after stating the facts), (1) Mr. Pomeroy, in discussing the requisites of a misrepresentation as a defense to the enforcement of specific performance of contracts, says: "In setting up a material misrepresentation to defeat the specific performance of a contract, the element of a scienter, of knowledge, of belief with or without reasonable grounds, or of intent, is wholly unnecessary and immaterial. So far as this most essential element of a fraudulent misrepresentation is concerned, it is sufficient to defeat a specific performance that the statement is actually untrue so as to mislead the party to whom it is addressed; the party making it need not know of its falsity, nor have any intent to deceive; nor does his belief in its truth make any difference. With respect to its effect upon the specific performance of a contract, a party making a statement as true, however honestly, for the purpose of influencing the conduct of the other party, is bound to know that it *is* true, and must stand or fall by his representation. The point upon which the defense turns is the *fact* of the other party having been misled by a misrepresentation calculated to mislead him, and not the existence of a design to thus mislead." Pomeroy's Equity Jurisprudence (3 ed.), § 889.

(2) And in the next section, the same author said: "Another element of a fraudulent misrepresentation, without which there can be no remedy, legal or equitable, is, that it must be relied upon by the party to whom it is made, and must be an immediate cause of his conduct which alters his legal relations. Unless an untrue statement is believed and acted upon, it can occasion no legal injury. It is essential, therefore, that the party addressed should trust the representation, and be so thoroughly induced by it that, judging from the ordinary experience of mankind, in the absence of it he would not, in all reasonable probability, have entered into the contract or other transaction. It is not necessary that the false representation should be the sole inducement;

others may occur with it in influencing the party. Where several representations have been made, and one of them is false, the court has no means of determining, as was well said by Lord Cranworth, that this very one did not turn the scale." Pomeroy's Equity Jurisprudence (3 ed.), § 890.

This principle of law was recognized by this court in the case of *Yeates* v. *Pryor,* 11 Ark. 58.

In the case before us the evidence shows that Mr. Taliaferro represented to Mrs. Boyd that the property around the hotel comprised one and one-half or two acres, and also stated that all the property within the fences around the hotel belonged to him and was included in the exchange of lands. It afterward developed that an irregular piece of land on the north side of the house, sixty-two feet in width on the front end and comprising one-seventh of an acre, did not belong to the hotel and was not described in the deed.

It is true that Mr. Tolson testified that when Taliaferro, with a wave of his. hand, said that all the land within the fences belonged to the hotel, they could not see the fences on the north side of the house; but, inasmuch as they had already seen that portion of the property he understood that in making that representation he referred to all the property within the enclosure.

Mrs. Boyd testified that she believed these representations to be true when she executed the contract for the exchange of lands, and that if she had not believed it to be true she would not have executed the contract.

In the case of *Yeates* v. *Pryor, supra,* the court said that where a deficit of the quantity of land was so small and unimportant as not to materially affect the interests of the parties a specific execution of the contract would be granted; but that there could be no doubt that the deficit in the quantity sold may be of such a nature and extent as to relieve the defendant from specific performance of the contract.

(3) In the instant case the contract was not for the sale of acreage property, but was of town lots upon which

there was situated a hotel; the shortage consisted in an irregular shaped strip of land on the north side of the hotel with a frontage of sixty-two feet. The deficiency, under these circumstances, was material. It can not be said, under these circumstances, that the deficiency was so slight as compared with the whole quantity of land to be conveyed, as not to be material. *Allen* v. *Kirk,* 219 Pa. St. 574.

(4)  The evidence tends to show that on the day after the contract was made, Doctor Robinson applied to Mrs. Boyd to purchase the property and she, thinking that he offered her $2,750 for it, agreed to accept it. It turned out, however, that she misunderstood him and that he offered her only $2,250 for the property, and she refused this offer. Mrs. Boyd stated, however, that at the time she was negotiating with Doctor Robinson, she did not know that there was a deficiency in the quantity of land and, therefore, it can not be said that she waived the misrepresentation.

Under these facts, as stated in the record, we are of the opinion that Mrs. Boyd was justified in relying upon the representations as to the quantity of land to be deeded to her and that she did rely upon the representations made by the plaintiff; and, that on that account, the property being city lots, the variation was a material one.

The decree will be affirmed.